Esther C. Rodriguez
Nevada State Bar No. 006473
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
esther@rodriguezlaw.com

Richard J. (Rex) Burch (To apply *Pro Hac Vice*)
Texas State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

Michael A. Josephson (To apply *Pro Hac Vice*)
Texas State Bar No. 24014780
Andrew W. Dunlap (To apply *Pro Hac Vice*)
Texas State Bar No. 24078444
William M. Hogg (To apply *Pro Hac Vice*)
Texas State Bar No. 24087733
California State Bar No. 338196
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
whogg@mybackwages.com

*Attorneys for Plaintiff and Putative Collective Members*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ADHAM ZAAROUR, Individually and On Behalf of Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COLTER ENERGY SERVICES USA INC.,<br><br>Defendant. | **Case No. _____**<br><br>**PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**<br><br>1) Violation of the Fair Labor Standards Act—Failure to Pay All Overtime Wages Owed |

**PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**

1.       Plaintiff Adham Zaarour ("Zaarour") brings this collective action lawsuit against Defendant Colter Energy Services USA Inc. ("Colter") for violations of the Fair Labor Standards Act ("FLSA").

2.       Zaarour and the Putative Collective Members regularly work over 40 hours per week for Colter, but are not paid for all the hours they work each week at the appropriate overtime rate of pay.

3.       Zaarour brings this collective action to recover unpaid overtime wages, liquidated damages, and attorneys' fees and costs due and owing against Colter.

### JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction over this action pursuant 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. *See* 29 U.S.C. § 216(b).

5.       This Court has general personal jurisdiction over Colter because Colter is incorporated in Nevada. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015).

6.       Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) in this District because Colter, the sole Defendant, resides in this District. *See Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010) (summarizing that a corporation is the resident of its state of incorporation).

### PARTIES

7.       Plaintiff Adham Zaarour has been employed by Colter as a night supervisor/night operator since approximately October 2018. Zaarour's consent to join the collective action is attached herein as Exhibit A.

8.       Throughout his employment, Colter has classified Zaarour as non-exempt from overtime and has paid him on an hourly basis.

9.       Colter currently pays Zaarour a base hourly rate of pay of $25.50 per hour.

10.      From the beginning of his employment until March 1, 2022, Colter failed to pay Zaarour for his time spent picking up, driving, and transporting field assistants from their hotel location to their assigned worksite, and back, each workday.

11.      From the beginning of his employment through March 1, 2022, Colter paid the non-

1  exempt field assistants that Zaarour transported each workday for their drive time, but did not pay

2  Zaarour and other non-exempt supervisors like him for the same drive time.

3       12.    Throughout his employment, Colter paid Zaarour various categories of compensation in

4  addition to his hourly pay, including truck pay, mileage, and subsistence pay.

5       13.    Colter did not include this truck pay, mileage, or subsistence pay into Zaarour's regular

6  hourly rate of pay for purposes of calculating overtime pay.

7       14.    Colter categorizes truck pay and mileage as "earnings," and applies payroll taxes to those

8  categories of compensation.

9       15.    The truck pay, mileage, and subsistence pay provided to Zaarour are "pass-through" costs

10  that Colter charges to its customers at a mark-up, thus earning a profit on those categories of

11  compensation.

12       16.    Colter does not include the truck pay, mileage, or subsistence pay into Zaarour's regular

13  rate calculation.

14       17.    Zaarour brings this action on behalf of himself and other similarly situated hourly, non-

15  exempt Colter employees who were subject to Colter's policies and practices of (1) failing to pay drive

16  time and/or (2) failing to include truck pay, mileage, and/or subsistence pay into the regular hourly rate

17  of pay.

18       18.    Colter failed to pay drive time to its other non-exempt supervisory employees, such as

19  night supervisors, night operators, day supervisors, field supervisors, and other non-exempt employees

20  with similar supervisory job duties, thus depriving them of compensation for all overtime hours worked.

21       19.    Colter fails to include truck pay and mileage into the regular hourly rate calculation for its

22  other non-exempt supervisory employees, such as night supervisors, night operators, day supervisors,

23  field supervisors, and other non-exempt employees with similar supervisory job duties, thus depriving

24  them of all overtime compensation owed at the correct overtime rate of pay.

25       20.    Colter fails to include subsistence pay into the regular hourly rate calculation for all of its

26  non-exempt employees, regardless of job position or title, thus depriving them of all overtime

27  compensation owed at the correct overtime rate of pay.

28

21.    Thus, Colter uniformly deprives these employees of all overtime wages owed.

22.    The putative collective(s) of similarly situated employees is defined as:

**Drive Time Collective**
**All current and former hourly, non-exempt employees of Colter who incurred unpaid drive time at any time during the past 3 years anywhere in the United States.**

**Truck Pay/Mileage Collective**
**All current and former hourly, non-exempt employees of Colter who either earned truck pay, mileage allowance, or both, at any time during the past 3 years anywhere in the United States.**

**Subsistence Pay Collective**
**All current and former hourly, non-exempt employees of Colter who earned subsistence pay at any time during the past 3 years anywhere in the United States.**

23.    Collectively, these groups are referred to as the "Putative Collective Members."

24.    Defendant Colter Energy Services USA Inc. is a Nevada for-profit corporation with its principal place of business located in Canada.

25.    Colter is a resident of Nevada.

26.    Colter may be served through its registered agent: **Registered Agent Solutions, Inc., 187 East Warm Springs Road, Suite B, Las Vegas, Nevada 89119**.

### COVERAGE UNDER THE FLSA

27.    At all relevant times, Colter was and is an "employer" within the meaning of Section 3(d) of the FLSA.

28.    At all relevant times, Colter was and is an "enterprise" within the meaning of Section 3(r) of the FLSA.

29.    At all relevant times, Colter was and is an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because Colter had and has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as oil and gas products, cell phones, computers, tools, and other mechanical equipment—that have been moved in or produced for commerce.

30.    At all relevant times, Colter has had an annual gross volume of sales made or business done of not less than $500,000 each year over the past 3 years.

31.    At all relevant times, Zaarour and the Putative Collective Members are and were Colter's "employees" within the meaning of Section 3(e) of the FLSA.

32.    Colter uniformly failed to pay Zaarour and Drive Time Collective Members for their drive time starting at least 3 years prior to the date this lawsuit was filed until March 1, 2022, even during weeks in which such drive time constituted hours worked in excess of 40 in a workweek.

33.    Colter uniformly fails to include truck pay and/or mileage allowances, which Colter itself classifies as "earnings" and to which Colter applies payroll taxes, into Zaarour's and Truck Pay/Mileage Collective Members' regular rates of pay for purposes of calculation Zaarour's and Truck Pay/Mileage Collective Members' overtime rates of pay.

34.    Colter uniformly fails to include subsistence pay, which Colter charges through to its client as a markup and upon which earned a profit, into Zaarour's and Subsistence Pay Collective Members' regular rates of pay for purposes of calculating Zaarour's and Subsistence Pay Collective Members' overtime rates of pay.

35.    As a result, Colter has failed and fails to pay Zaarour and Putative Collective Members all overtime wages owed for all compensable work they perform.

36.    Colter's drive time and compensation policies, therefore, violate the FLSA by depriving Zaarour and the Putative Collective Members of all overtime wages owed for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

**FACTS**

37.    Colter provides services in the oil and gas industry, including production testing, fracking services, and others, in various states, including Colorado, Wyoming, North Dakota, Ohio, Pennsylvania, and West Virginia.

38.    To meet its business objectives, Colter hires non-exempt employees such as field assistants, night operators/night supervisors, and day supervisors/field supervisors.

39.    Zaarour has worked for Colter since approximately October 2018 as an hourly-paid night

1   supervisor/night operator.

2       40.    Zaarour has worked for Colter in multiple states, including Pennsylvania, Ohio, and West

3   Virginia.

4       41.    On average, Zaarour works 12.5 to 13 hours per day, and 6-to-7 days per workweek for

5   Colter.

6       42.    On average, Zaarour works approximately 75-to-90 hours per week each workweek for

7   Colter.

8       43.    For example, Zaarour worked 101.5 total hours during the week of February 19, 2023,

9   which included 61.5 on-the-clock overtime hours.

10      44.    By further way of example, Zaarour worked 80 total hours during the week of October

11  16, 2022, which included 40 on-the-clock overtime hours.

12      45.    By way of further example, Zaarour worked 101.5 total hours during the week of October

13  23, 2022, which included 61.5 on-the-clock overtime hours.

14      46.    By further way of example, Zaarour worked 7 days, for a total of 87.5 on-the-clock hours,

15  during the week of February 20, 2022, which included 47.5 on-the-clock overtime hours. Zaarour

16  estimates he incurred 1-to-2 hours of unpaid drive time per workday during this workweek, which would

17  consist entirely of overtime hours.

18      47.    By further way of example, Zaarour worked 6 days, for a total of 61.75 on-the-clock hours,

19  during the week of February 6, 2022, which included 21.75 on-the-clock overtime hours. Zaarour

20  estimates he incurred 1-to-2 hours of unpaid drive time per workday during this workweek, which would

21  consist entirely of overtime hours.

22      48.    By further way of example, Zaarour worked 7 days, for a total of 84.5 on-the-clock hours,

23  during the week of October 3, 2021, which included 44.5 on-the-clock overtime hours. Zaarour

24  estimates he incurred 1-to-2 hours of unpaid drive time per workday during this workweek, which would

25  consist entirely of overtime hours.

26      49.    By further way of example, Zaarour worked 6 days, for a total of 75 on-the-clock hours,

27  during the week of October 10, 2021, which included 35 on-the-clock overtime hours. Zaarour estimates

28

he incurred 1-to-2 hours of unpaid drive time per workday during this workweek, which would consist entirely of overtime hours.

50.    On average, Zaarour's unpaid drive time consisted of approximately 1-to-2 hours per workday, and sometimes more.

51.    From the beginning of his employment through March 1, 2022, Zaarour incurred similar amounts of unpaid drive time each workday and workweek with Colter, resulting in unpaid overtime hours.

52.    Drive Time Collective Members incurred similar amounts of unpaid drive time hours during workweeks in which they worked at least 40 total hours.

53.    Colter employs hundreds of other hourly workers, including Putative Collective Members, throughout the country.

54.    Colter classifies Zaarour and Putative Collective Members as non-exempt employees.

55.    Colter pays Zaarour and Putative Collective Members on an hourly rate basis.

56.    Zaarour and Putative Collective Members frequently work over 40 hours per week.

57.    Starting at least 3 years before the filing of this Complaint until March 1, 2022, Colter did not pay Zaarour or the Drive Time Collective Members for the time spent picking up, driving, and transporting Colter's non-exempt field assistants that Zaarour or the Drive Time Collective Members supervised from their lodging/hotels to their assigned work locations.

58.    Colter paid the field assistants for this drive time from the lodging/hotel to the worksite prior to March 1, 2022, and continues to pay the field assistants for this drive time after March 1, 2022 through the present.

59.    Starting at least 3 years before the filing of this Complaint until approximately March 2022, Colter did not pay Zaarour or the Drive Time Collective Members for the time spent driving and transporting Colter's non-exempt field assistants that Zaarour or the Drive Time Collective Members supervised from their work locations back to their lodging/hotels at the end of the workday.

60.    Colter paid the field assistants for this drive time from the worksite back to their lodging/hotel prior to March 1, 2022, and continues to pay the field assistants for this drive time after

March 1, 2022 through the present.

61.    This drive time to and from the worksite is considered compensable time that was worked by Zaarour and the Drive Time Collective Members because it was necessary to the principal work performed by Zaarour and the Drive Time Collective Members.

62.    The drive time is considered compensable time that was worked by Zaarour and the Drive Time Collective Members because they performed this work at Colter's express direction.

63.    The drive time is considered compensable time that was worked by Zaarour and the Drive Time Collective Members because Colter paid the non-exempt field assistants for the same drive time, demonstrating the drive time was undertaken primarily for Colter's benefit.

64.    Despite failing to pay Zaarour and Drive Time Collective Members for this drive time, Colter paid the employees who were being transported (*i.e.*, the field assistants) for their drive time.

65.    Starting March 1, 2022, Colter began to pay Zaarour and Drive Time Collective Members for their drive time.

66.    However, Colter did not issue any retroactive payments to Zaarour or the Drive Time Collective Members for the unpaid drive time that had already been incurred by Zaarour and Drive Time Collective Members prior to March 1, 2022.

67.    The aforementioned unpaid drive time performed by Zaarour and Drive Time Collective Members was an integral and indispensable part of their principal activities, was required by Colter, and was performed for Colter's benefit.

68.    Picking up, driving, and transporting employees were and are necessary elements of Zaarour's and Drive Time Collective Members' principal activities and are tasks with which Zaarour and Drive Time Collective Members cannot dispense if they are to perform their principal activities.

69.    Colter has a precise record of the amount of unpaid drive time incurred by Zaarour and Drive Time Collective Members, because Colter paid the field assistants a precise number of hours for their drive time.

70.    Zaarour and Drive Time Collective Members necessarily incurred the same amount of drive time hours that were paid to Colter's non-exempt field assistants whom Zaarour and Drive Time

ORIGINAL COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Zaarour v. Colter Energy Services USA Inc.*

Collective Members transported to and from the relevant worksites each workday.

71.      As a result of Colter's uniform drive time pay practices, Zaarour and Drive Time Collective Members were not compensated for all overtime hours worked.

72.      Colter also paid various categories of compensation to Zaarour and Putative Collective Members in addition to their base hourly rates of pay, in the form of (i) truck pay, (ii) mileage, and (iii) subsistence pay.

73.      Colter subjected the truck pay payments issued to Zaarour and Truck Pay/Mileage Collective Members to payroll tax withholdings.

74.      Colter subjected the mileage allowance payments issued to Zaarour and Truck Pay/Mileage Collective Members to payroll tax withholdings.

75.      Colter issued and continues to issue wage statements to Zaarour and Truck Pay/Mileage Collective Members designating the truck pay and mileage allowance payments as wage earnings.

76.      Colter has previously submitted documentation to governmental taxing authorities confirming the mileage allowances paid to Zaarour and Truck Pay/Mileage Collective Members are included in non-exempt employees' compensation.

77.      The truck pay and mileage allowances paid to Zaarour and Truck Pay/Mileage Collective Members constitute wages that are properly included into their regular hourly rates of pay for purposes of calculating overtime pay.

78.      The subsistence pay that Colter paid Zaarour and Subsistence Pay Collective Members was a "pass-through" cost that Colter charged to its customers at a mark-up.

79.      Colter made a profit on the subsistence pay allowances it paid to Zaarour and Subsistence Pay Collective Members.

80.      Colter does not require Zaarour or the Subsistence Pay Collective Members to return any unused portions of their subsistence pay back to Colter.

81.      Colter makes no efforts to recoup or recover the amounts of unused subsistence payments from Zaarour and Subsistence Pay Collective Members when their subsistence pay exceeds their food costs.

82. Save for when non-exempt employees work for Colter's customer CNX, Colter pays the same amount in subsistence pay to Zaarour and Subsistence Pay Collective Members regardless of geographic region worked.

83. The subsistence pay constitutes wages that are properly included into Zaarour's and Subsistence Pay Collective Members' regular rates of pay for purposes of calculating overtime pay during workweeks in which Zaarour and Subsistence Pay Collective Members worked over 40 hours.

84. Colter, however, does not include the truck pay, mileage, or subsistence pay into Zaarour's and/or the Putative Collective Members' regular rate calculations.

85. Zaarour's and/or Putative Collective Members' overtime rates of pay do not increase when they receive truck pay, mileage, or subsistence pay.

86. As a result of failing to include those additional categories of compensation into the regular rate calculation, Colter fails to pay Zaarour and Putative Collective Members at the appropriate overtime rates of pay of 1.5 times their true regular rates of pay during weeks in which Zaarour and Putative Collective Members are provided truck pay, mileage allowance, and/or subsistence pay and work in excess of 40 total hours.

87. As a result of Colter's company-wide policies, Zaarour and Putative Collective Members are not paid for all time worked each workday and each workweek at the appropriate overtime rate of pay, and are owed significant unpaid wages.

88. Colter knows Zaarour and Putative Collective Members work more than 40 hours in a week and knows of the requirements to pay all overtime hours worked at a rate of not less than 1.5 times their true regular rate of pay.

89. Colter's failure to pay overtime to Zaarour and Putative Collective Members for all overtime hours worked at the appropriate overtime rate of pay is a willful, knowing, and/or reckless violation of the FLSA.

90. Colter's method of paying Zaarour and Putative Collective Members in violation of the FLSA is willful, knowing, and/or reckless, and is not based on a good faith and/or reasonable belief that its conduct complies with the law.

91.     Colter knows and/or knew the requirement to pay for all time worked at the appropriate overtime rate of pay, but intentionally and/or recklessly chose not to do so.

**29 U.S.C. § 216(b) COLLECTIVE ACTION ALLEGATIONS**

92.     Zaarour incorporates all other paragraphs by reference.

93.     Zaarour brings his FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who work or have worked for Colter as non-exempt employees, and who are further defined above in Paragraph 22.

94.     The Putative Collective Members are, and have been, victimized by Colter's compensation practices, which are in willful violation of the FLSA.

95.     Other Putative Collective Members work, and have worked, with Zaarour, and indicate they are paid in a similar manner, perform similar work, and are subject to Colter's same illegal drive time and compensation practices described herein.

96.     As part of its regular business practice, Colter has engaged in a pattern, practice, or policy of violating the FLSA on a company-wide basis as described herein.

97.     Although Colter permits and/or requires Zaarour and Putative Collective Members to work in excess of 40 hours per workweek, Colter denies them full compensation for all overtime hours worked at the appropriate overtime rates of pay.

98.     Zaarour has actual knowledge, through observations of and conversations with his co-workers, as well as through his experience with Colter's common compensation practices and policies, that groups of similarly situated potential opt-in plaintiffs exist who have been subjected to the same or similar compensation practice of (1) not being paid for their compensable drive time, (2) being paid truck pay and mileage allowance that is not included into the regular rate calculation, and/or (3) being paid subsistence pay that is not included into the regular rate calculation.

99.     The Putative Collective Members are similarly situated to Zaarour in that they share at least one common issue of law or fact material to the resolution of their claims, including but not limited to:

        a.    Zaarour and the Drive Time Collective Members incurred unpaid drive time during at

least one workweek in which they worked 40 total hours;

b. Colter directed and required Zaarour and Drive Time Collective Members to perform these driving duties as a principal activity of their job duties for Colter;

c. These unpaid driving duties incurred by Zaarour and Drive Time Collective Members are actually compensable work hours under the FLSA;

d. Colter paid other non-exempt employees that Zaarour and the Drive Time Collective Members were transporting for their drive time, while at the same time failing to pay Zaarour and Drive Time Collective Members for the same drive time, demonstrating both that (i) such drive time is or should be compensable under the FLSA, and (ii) that such unpaid drive time is readily discernible for each Drive Time Collective Member from Colter's timekeeping, payroll, and business records;

e. Colter began paying Zaarour and Drive Time Collective Members for their drive time job duties starting March 1, 2022, indicating such driving job duties constitute compensable work time under the FLSA;

f. Colter pays Zaarour and Truck Pay/Mileage Collective Members "truck pay" in addition to their base hourly rates of pay which is not included into the regular rate calculation;

g. Colter pays Zaarour and Truck Pay/Mileage Collective Members a mileage allowance in addition to their base hourly rates of pay which is not included into the regular rate calculation;

h. Colter designates the truck pay and mileage allowances as earnings on the wage statements issued to Zaarour and Truck Pay/Mileage Collective Members;

i. Colter has informed at least one governmental taxing authority that the mileage allowance paid to Truck Pay/Mileage Collective Members' is considered part of their wages or compensation;

j. Colter applies payroll taxes to the truck pay and mileage allowances paid to Zaarour and Truck Pay/Mileage Collective Members, indicating those categories of

compensation are wages;

k.   Colter pays Zaarour and Subsistence Pay Collective Members "subsistence pay" in addition to their base hourly rates of pay which is not included into the regular rate calculation;

l.   Colter does not require Zaarour or Subsistence Pay Collective Members to furnish receipts to support the subsistence pay amounts;

m.   Colter does not require Zaarour or Subsistence Pay Collective Members to return un-used portions of their subsistence pay, nor does Colter try to recoup such un-used subsistence payment amounts;

n.   Zaarour and Subsistence Pay Collective Members do not send the remainder of the subsistence payments back to Colter if they do not spent the full subsistence payment in a given day;

o.   Colter charges its customers for the subsistence pay as a "pass through" cost at a mark-up for a profit, indicating it was not intended to be a reimbursement for a business expense incurred for Colter's benefit or on Colter's behalf; and

p.   The amount and proper formula for calculating damages.

100.   Colter's failure to pay all overtime pay owed to Zaarour and Putative Collective Members at the appropriate rates required by the FLSA result from generally applicable policies or practices, and do not depend on personal circumstances of individual collective members.

101.   Liability and damages do not and will not depend on the individual experiences of the Putative Collective Members, but are readily identifiable and determinable from common evidence in the form of Colter's payroll, timekeeping, and business records.

102.   Zaarour's experience, with respect to the violative drive time and compensation practices described herein, is typical of Colter's other non-exempt employees throughout the country regardless of geographic location worked or customer for whom they worked.

103.   The specific job titles or precise job responsibilities of each Putative Collective Member do not foreclose collective treatment because FLSA liability in this case relates to Colter's uniform and

common decisions to pay its non-exempt employees without incorporating these various forms of compensation into the regular rate calculation and/or Colter's uniform and common decision not to pay night supervisors, night operators, day supervisors, field supervisors, and other non-exempt employees with similar supervisory job duties for their compensable drive time.

104.    Putative Collective Members regularly work or have worked in excess of 40 hours during at least one workweek during the 3 years prior to the filing of this Complaint.

105.    Putative Collective Members are not exempt from receiving overtime pay under the FLSA.

106.    Like Zaarour, the Putative Collective Members, irrespective of their particular job duties or job titles, are entitled to receive overtime compensation for all hours worked in excess of 40 hours during a workweek at the appropriate overtime rate of pay.

107.    The names and contact information of the Putative Collective Members are readily identifiable and available from Colter's business records.

108.    A collective action, such as the instant suit, is superior to other available means for fair and efficient adjudication of the lawsuit.

109.    Absent a collective action, many Putative Collective Members will likely not obtain redress for their injuries, and Colter will reap the unjust benefits of violating the FLSA's overtime provisions.

110.    Further, even if some of the Putative Collective Members could afford individual litigation against Colter, it would be unduly burdensome to the judicial system.

111.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Collective Members' claims.

112.    Zaarour knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

113.    There are many similarly situated Putative Collective Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

114.    This notice should be sent to the Putative Collective Members pursuant to 29 U.S.C. § 216(b) and/or pursuant to the Court's authority to manage the collective action process in a fair and

efficient manner.

115.    To the extent required or permitted by law, notice will be provided to these individuals by mail and/or by the use of techniques and a form of notice similar to those customarily used in other collective actions in the Ninth Circuit.

116.    Although the exact amount of damages may vary among the individual Putative Collective Members in proportion to the number of hours they worked and their regular rates of pay, damages for each individual can be easily calculated using a simple formula.

117.    The FLSA claims of all Putative Collective Members arise from a common nucleus of facts.

118.    FLSA liability is based on a systemic course of wrongful conduct by Colter that caused harm to all Putative Collective Members.

**COLTER'S FLSA VIOLATIONS WERE WILLFUL
AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA**

119.    Zaarour incorporates all other paragraphs by reference.

120.    Colter knows and at all relevant times knew it controlled Zaarour's and Putative Collective Members' compensation.

121.    Colter knows and at all relevant times knew it was required to pay non-exempt employees, including Zaarour and Drive Time Collective Members, for their compensable drive time, because Colter paid drive time to other non-exempt employees who were being driven by Zaarour and Drive Time Collective Members and because Colter began paying Zaarour and Drive Time Collective Members for their drive time starting on March 1, 2022.

122.    Colter knows and at all relevant times knew it controlled the calculation of Zaarour's and Putative Collective Members' regular hourly rates of pay.

123.    Colter knows and at all relevant times knew it controlled the calculation of Zaarour's and Putative Collective Members' overtime rates of pay.

124.    Thus, Colter knew, should have known, and/or recklessly disregarded the fact that it failed to pay Zaarour and Drive Time Collective Members for all overtime hours worked.

125.    Colter likewise knows, should reasonably know, and/or recklessly disregards the fact that

it fails to properly calculate the regular hourly rates of pay for Zaarour and Putative Collective Members, thereby failing to pay them at the appropriate overtime rates of pay in violation of the FLSA.

126.    Colter's failure to pay Zaarour and Putative Collective Members all overtime wages owed is neither reasonable, nor is such a decision not to pay those overtime wages made in good faith.

127.    Colter knows and at all relevant times knew it was subject to the FLSA's overtime provisions.

128.    Colter knows and at all relevant times knew the FLSA requires it to pay non-exempt employees, including Zaarour and Putative Collective Members, overtime wages at rates not less than 1.5 times their true regular rates of pay for all hours worked in excess of 40 in a workweek.

129.    Colter knows and at all relevant times knew each Putative Collective Member, including Zaarour, has worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required these workers to record their hours worked.

130.    Colter's failure to pay Putative Collective Members, including Zaarour, for all overtime hours worked at the appropriate overtime rates is neither reasonable, nor is the decision made in good faith.

131.    Colter knew, should have known, and/or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA.

132.    Colter knowingly, willfully, and/or in reckless disregard carried out these illegal compensation schemes that systematically deprived Putative Collective Members of premium overtime wages for all overtime hours worked at the appropriate overtime rates in violation of the FLSA.

**CAUSE OF ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**FAILURE TO PAY ALL OVERTIME WAGES OWED**
**(29 U.S.C. § 216(b) Collective Action)**

133.    Zaarour incorporates all other paragraphs by reference.

134.    Zaarour brings his FLSA claims as a collective action on behalf of himself and the other Putative Collective Members as described herein.

135.    Colter violated, and is violating, the FLSA by employing non-exempt employees (Zaarour and the Putative Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees all overtime wages owed at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

136.    Colter's unlawful conduct harmed and is harming Zaarour and the Putative Collective Members by depriving them of all overtime wages they are owed for all overtime hours worked.

137.    Accordingly, Zaarour and Drive Time Collective Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay for all unpaid drive time hours worked, plus an equal amount as liquidated damages.

138.    Zaarour and Putative Collective Members are also entitled to recover the difference between their true overtime rates of pay (*i.e.*, 1.5 times their regular rates of pay calculated as including truck pay, mileage, and/or subsistence pay with their base hourly rates of pay), less the overtime rates they were actually paid, plus an equal amount as liquidated damages.

139.    Zaarour and Putative Collective Members are also entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## JURY DEMAND

140.    Zaarour hereby demands trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Zaarour, individually and on behalf of the Putative Collective Members, seeks the following relief:

1.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Putative Collective Members allowing them to join this action by filing a written notice of consent;

2.    An Order pursuant to 29 U.S.C. § 216(b) finding Colter liable for unpaid overtime wages due to Zaarour and Putative Collective Members, plus liquidated damages in an amount equal to their unpaid overtime wages;

3.    A Judgment against Colter awarding Zaarour and Putative Collective Members all their

1  unpaid overtime wages, liquidated damages, and any other penalties available under the

2  FLSA;

3      4.      An Order awarding attorney's fees, costs, and expenses as mandated pursuant to 29 U.S.C.

4              § 216(b);

5      5.      Award pre-judgment and post-judgment interest at the highest applicable rates; and

6      6.      Such other and further relief as may be necessary and appropriate.

7

8  Date: March 5, 2024                      Respectfully submitted,

9

10                                          /s/ Esther C. Rodriguez
                                            Esther C. Rodriguez (Bar No. 006473)
11                                          **RODRIGUEZ LAW OFFICES, P.C.**
                                            10161 Park Run Drive, Suite 150
12                                          Las Vegas, Nevada 89145
                                            Tel: (702) 320-8400
13                                          Fax: (702) 320-8401
                                            esther@rodriguezlaw.com
14
                                            /s/ William M. Hogg
15                                          Michael A. Josephson (To Apply *Pro Hac Vice*)
                                            Andrew W. Dunlap (To Apply *Pro Hac Vice*)
16                                          William M. Hogg (To Apply *Pro Hac Vice*)
17                                          **JOSEPHSON DUNLAP LLP**
                                            11 Greenway Plaza, Suite 3050
18                                          Houston, Texas 77046
                                            Tel: (713) 352-1100
19                                          Fax: (713) 352-3300
                                            mjosephson@mybackwages.com
20                                          adunlap@mybackwages.com
21                                          whogg@mybackwages.com

22                                          Richard J. (Rex) Burch (To Apply *Pro Hac Vice*)
                                            **BRUCKNER BURCH PLLC**
23                                          11 Greenway Plaza, Suite 3025
                                            Houston, Texas 77046
24                                          Tel: (713) 877-8788
                                            rburch@brucknerburch.com
25

26                                          *Counsel for Plaintiff and Putative Collective Members*

27

28
────────────────────────────────────────────────────
                              -17-
    ORIGINAL COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
              *Zaarour v. Colter Energy Services USA Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**
*Zaarour v. Colter Energy Services USA, Inc.*

# EXHIBIT A

**CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Adham Zaarour

1. I hereby consent to make a claim against Colter Energy Services to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against Colter Energy Services.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Adham Zaarour (Feb 14, 2024 18:20 EST)_    Date Signed: Feb 14, 2024